UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

LANDWATCH LANE COUNTY, an
Oregon nonprofit corporation,

      Plaintiff,

   vs.

UNITED STATES FISH AND
WILDLIFE SERVICE, an agency of
the United States, UNITED STATES
DEPARTMENT OF AGRICULTURE
RURAL DEVELOPMENT, an agency of
the United States,

      Defendants.

Case No. 6:12-cv-958-AA

OPINION AND ORDER

─────────────────────────────

Sean T. Malone
259 E. 5th Ave.
Suite 200-G
Eugene, OR  97401
    Attorney for plaintiff

Ignacia S. Moreno
Assistant Attorney General
Seth M. Barsky, Chief
S. Jay Govindan, Asst. Chief

1 - OPINION AND ORDER

J. Brett Grosko
U.S. Department of Justice
Environmental & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611
       Attorneys for defendants

J. Kenneth Jones
Ross M. Williamson
Local Government Law Group, P.C.
Speer Hoyt, LLC
975 Oak Street, Suite 700
Eugene, OR 97401
       Attorneys for amicus curiae City of Veneta

AIKEN, Chief Judge:

     Plaintiff filed suit against defendants United States Fish and
Wildlife Service (FWS) and United States Department of Agriculture-
Rural Development (USDA) alleging violations of the Endangered
Species Act (ESA) and the National Environmental Policy Act (NEPA)
arising from defendants' funding and approval of a water pipeline
project undertaken by the City of Veneta. Plaintiff and defendants
filed cross-motions for summary judgment, and amicus curiae City of
Veneta filed a brief in support of defendants' motion. I find that
plaintiff fails to establish standing to pursue this action, and
defendants' motion for summary judgment is granted.

BACKGROUND

A.  Pipeline Project

     The City of Veneta (Veneta) is a small community in Oregon
located approximately 12 miles west of the Eugene/Springfield
metropolitan area, in the southwest corner of the Willamette

Valley. Veneta currently obtains its water supply solely from groundwater sources, and the current aquifer will not provide sufficient water for future demands. Therefore, Veneta has determined that it requires additional sources of water and has agreed to purchase water from the Eugene Water and Electric Board (EWEB), the supplier of water for the neighboring City of Eugene (Eugene). EWEB's source of water is the McKenzie River.

To facilitate the new water supply, Veneta intends to construct a 9.7 mile water pipeline from an existing EWEB source main to Veneta. The pipeline construction will occur within Willamette Valley Prairie lands, a now rare ecosystem providing habitat for threatened and endangered species, including the Fender's blue butterfly (FBB), Kincaid's lupine (Lupine), Bradshaw's lomatium (Lomatium), and the Willamette Daisy (Daisy).

According to defendants, the pipeline project will have a temporary footprint and be buried within 4-foot wide trench for 9.6 miles, with approximately 0.1 mile of the project bored under bridged stream crossings. FWS AR at 207, 211. The pipeline trench will run along and within the Highway 126 right-of-way to Kenneth Nielson Road, at which point it will continue in existing roadways along six roads. FWS AR at 207; USDA AR I at 2617-18. Any trenching outside of existing roadways will be restored to pre-construction conditions, and excavation in areas of wetlands or ESA-listed species will be stockpiled and replaced to restore critical

habitat. FWS AR at 211-12; USDA AR I at 2617. The work will be completed in sections to minimize erosion, and construction staging areas will be in uplands or adjacent developed areas over 150 feet from wetlands or other sensitive habitats. FWS AR at 212.

B. Federal Funding and Approval of the Pipeline Project

In 2010, Veneta applied for a financing package from the USDA to finance construction of the pipeline. The package consists of: 1) a $7,033,000 loan with a 40-year term; 2) a $6,000,000 loan with a 40-year term; and 3) a grant of $2,649,000. Ingham Decl. at 2.

Before approving the financing package, USDA engaged in informal ESA § 7 consultation with FWS concerning several species, including the FBB, Lupine, Lomatium, and Daisy. FWS AR at 204-340. 16 U.S.C. § 1536(a)(2). As part of its ESA consultation, USDA agreed to require Veneta to fully restore approximately ten acres of land designated by FWS as Daisy critical habitat. FWS AR at 207, 215. The restoration includes the manual removal of trees and brush and the planting of native grasses while avoiding any impact on individual Daisy or Lomatium plants. FWS AR at 215.

Pursuant to the ESA, USDA prepared a revised biological assessment (BA) to evaluate potential effects of the pipeline project on listed species. Id. at 204-340; 16 U.S.C. § 1536(c)(1). The revised BA concluded that the pipeline project "May Affect, [Is] Not Likely to Adversely Affect" the FBB, Lomatium, and Daisy, and has "No Effect" on Lupine or FBB habitat. FWS AR at 251-52.

4 - OPINION AND ORDER

As required by NEPA, USDA also obtained a report, constituting an Environmental Assessment (EA), that evaluated the environmental impacts of the pipeline construction and the delivery of water to Veneta. See USDA AR I at 2632-97; 40 C.F.R. § 1508.9(a). USDA considered several documents and reports regarding the potential impacts of the pipeline and concluded that the pipeline project would not individually or cumulatively have a significant effect on the quality of the human environment. USDA therefore issued a Finding of No Significant Impact (FONSI). USDA AR I at 2737-40.

On August 10, 2010, USDA obligated the funds comprising Veneta's financing package. USDA AR I at 212-15. As a condition of receiving federal financial assistance for the pipeline project, Veneta must implement several mitigation measures, including:

1.    A restoration plan for all disturbed wetland habitat pursuant to the requirements of a U.S. Army Corps of Engineers' permit;

2.    Noise abatement technology for construction vehicles and machinery to minimize disturbance of wildlife and nearby residents;

3.    Restrictions on trimming and clearing of understory shrubs and felling of trees within the wildlife refuge between November 1st and March 15 to avoid impacting migratory bird nesting;

4.    A Stormwater Management Plan that reflects Best Management Practices for temporary erosion and sedimentation controls during construction;

5 - OPINION AND ORDER

5.    A policy preventing water service to new development within Veneta's corporate boundary or Urban Growth Boundary (UGB) that would encroach on or adversely affect any jurisdictional wetland, unless no practicable alternatives exist;

6.    A prohibition against installing water service lines to any new development located within flood plain areas, unless no practicable alternatives exist to allowing such development.

See USDA AR I at 2620-22. Currently, Veneta cannot provide water from the pipeline to residential development outside of Veneta's UGB, which is coterminous with Veneta's corporate city limits. Id. at 2648-49; Ingham Decl. at 4.

The FWS considered USDA's revised BA along with other documents in the record and Veneta's restoration requirements. On March 7, 2012, FWS issued a Letter of Concurrence (LOC) and concurred with USDA's findings that the pipeline project will have "no effect" or "may affect" but is "not likely to adversely affect" threatened and endangered species. FWS AR at 172-177.

Shortly afterward, the Eugene City Manager recommended to the Eugene City Council that Eugene expand its UGB. Plaintiff, a non-profit corporation which promotes sustainable land use practices and protection of wildlife habitat, requested that USDA supplement its EA to consider the cumulative impacts of the pipeline project and the recommended expansion of the Eugene UGB. USDA declined to supplement the EA.

On May 30, 2012, plaintiff filed suit. Plaintiff contends that defendants violated the ESA and NEPA through FWS's concurrence with USDA's revised BA and USDA's failure to supplement the EA.

DISCUSSION

Plaintiff moves for summary judgment on grounds that FWS violated the ESA by concurring with the USDA that the pipeline project would "not likely adversely affect" the FBB and have "no effect" on its critical habitat. Plaintiff contends that FWS was required to prepare a Biological Opinion to analyze thoroughly the potential impacts of future development and increased traffic that could result from the pipeline project. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14. Plaintiff also argues that the USDA violated NEPA by failing to supplement its EA to analyze the potential cumulative impacts of urban development that could result from the recommended expansion of Eugene's UGB. 40 C.F.R. § 1502.9(c). Plaintiff argues that the court should find FWS's and USDA's actions arbitrary and capricious under the Administrative Procedures Act, 5 U.S.C. § 706(2)(A), and set aside the FWS's LOC and the USDA's EA.

Defendants, in turn, move for summary judgment on grounds that plaintiff fails to establish injury in fact, causation or redressability and therefore lacks standing to sue. Should the court reach the merits of plaintiff's claims, defendants argue that plaintiff waived its NEPA claim, USDA was not required to

supplement its EA, and USDA and FWS adequately analyzed the potential effects resulting from the pipeline project. The City of Veneta, like defendants, argues that plaintiff cannot establish redressability and that its asserted harm is "too hypothetical and too uncertain to support its requested relief." Veneta's Opp'n at 6. I agree that plaintiff fails to establish standing to pursue this cause of action.

Standing is an essential component of the "case or controversy" requirement of Article III, section 2 of the United States Constitution. "The standing doctrine, like other Article III doctrines concerning justiciability, ensures that a plaintiff's claims arise in a 'concrete factual context' appropriate to judicial resolution." Arakaki v. Lingle, 477 F.3d 1048, 1059 (9th Cir. 2007) (quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982)). "The exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, is therefore restricted to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate." Valley Forge, 454 U.S. at 473.

The Supreme Court has articulated requirements establishing the "irreducible constitutional minimum" for standing: "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-81 (2000); <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." <u>Lujan</u>, 504 U.S. at 561. In this case, plaintiff fails to meet each of these requirements.

Through its members, plaintiff claims aesthetic, ecological, educational, environmental, recreational, and spiritual interests in Willamette Valley Prairie habitat, including the Eugene Wetlands area between Veneta and Eugene and adjacent to Highway 126. Plaintiff argues that "[i]ncreased urbanization is likely to adversely affect the listed species" of the Willamette Valley Prairie and that "increased traffic from increased development is likely to adversely affect" the FBB. Pl.'s Am. Mem. at 19, 23.

Plaintiff further maintains that the pipeline project will harm its appreciation and enjoyment of the Willamette Valley Prairie and the FBB by facilitating and encouraging urban development in Veneta, thus increasing "suburban sprawl" and the flow of traffic on Highway 126. Bauguess Decl. at 2; Emmons Decl. at 3; Golick Decl. at 6; Nelson Decl. at 2; <u>see also</u> Hollyer Decl. at 5 (stating that "installation and construction of the water

pipeline will spur urbanization and sprawl"); Winter Decl. at 3 (expressing concern that the pipeline project "will allow the continued expansion and development of Veneta," "encourage the growth of Veneta's population," and "likely increase traffic between Veneta and Eugene").

Importantly, plaintiff alleges no actual injury or threat of injury to its interests arising from the construction of the water pipeline itself. Rather, it is the generalized threat of <u>future</u> urban development in and around Veneta and the presumed traffic increase on Highway 126 that fuels this lawsuit. However, alleged harm from urbanization or "sprawl" is nothing more than a "generalized grievance" of wide public concern that courts have repeatedly found insufficient to confer standing. <u>Lujan</u>, 504 U.S. at 573-74; <u>Valley Forge</u>, 454 U.S. at 473 (federal courts are not "forums for the ventilation of public grievances") <u>see also</u> <u>Thomas v. Mundell</u>, 572 F.3d 756, 760 (9th Cir. 2009) ("[A] plaintiff normally does not have standing where the only asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens.") (internal quotation marks and citation omitted); <u>Reudiger v. U.S. Forest Serv.</u>, 427 F. Supp. 2d 974, 982 (D. Or. 2005) ("The prevention of safety, environmental, and traffic related impacts to a region are not the type of concrete, litigant-specific interests upon which a party may base a procedural injury."). Plaintiff's members simply fail to show how

they will be injured in any concrete and particularized way by the water pipeline project.

Further, even if plaintiff's alleged injury could be considered concrete and particularized, it is not actual or imminent. While a threat of injury may comply with the injury in fact requirement, the threat must be "both real and immediate, not conjectural or hypothetical." Scott v. Pasadena Unified School Dist., 306 F.3d 646, 656 (9th Cir. 2002) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)). Here, plaintiff alleges that Veneta's increased water supply will lead to increased commercial and residential development, which will lead to increased traffic on Highway 126, which ultimately will harm plaintiff's enjoyment and appreciation of Willamette Valley Prairie habitat. Plaintiff's claimed injury thus depends on a factual scenario involving: 1) the approval and completion of a development project in Veneta 2) built as a result of the increased water supply 3) that spawns a measurable increase in traffic on Highway 126 between Veneta and Eugene 4) that, in turn, adversely impacts the Willamette Valley Prairie and harms plaintiff's interests. Such a scenario is neither "actual" nor "imminent."

First, the alleged threat of "urban sprawl" will not be realized at any foreseeable time, given that conditions for the financing package generally preclude the diversion of pipeline water for new development outside of Veneta's UGB, which is

coterminous with Veneta's city limits. USDA AR I at 2622. Land use
requirements likewise forbid the use of pipeline water for
development outside Veneta's UGB, and therefore "urban sprawl" from
the pipeline project is not remotely imminent. See id. at 2648.

Second, while it is reasonable to assume that an increased
water supply could lead to future development in Veneta, plaintiff
cites no pending or proposed plans for development within Veneta's
UGB that are dependent on the new water supply. Likewise, plaintiff
presents no evidence that any such development, if constructed,
will result in increased traffic along the Highway 126 corridor
between Veneta and Eugene. To paraphrase the amicus brief of
Veneta, the court has "no obligation to chase this rabbit down
plaintiff's hole of speculation." Veneta's Opp'n at 7. In sum, the
threat of future urban development and increased traffic cannot be
considered "actual and imminent."

I further find that plaintiff fails to establish that the
alleged threat of injury arises from defendants' approval and
funding of the pipeline project. The causation element requires
that the asserted injury be "fairly traceable to the challenged
action of the defendant" and not "the result of the independent
action of some third party not before the court." Tyler v. Cuomo,
236 F.3d 1124, 1132 (9th Cir. 2000) (internal quotation marks and
citation omitted). Here, the injury asserted by plaintiff - urban
development and increased traffic along Highway 126 - is not

causally connected to defendants' approval and funding of the pipeline project.

Plaintiff purports to rely on its alleged "procedural injury" arising from the failure of the USDA and FWS to comply with NEPA and the ESA.[1] However, "[t]his Court repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law." Valley Forge, 454 U.S. at 482-83 (internal quotation marks and citations omitted); see also Lujan, 504 U.S. at 574-75. Thus, to assert a procedural injury, plaintiff must show that the challenged "procedures are designed to protect a concrete threatened interest," and that the procedural right, "'if exercised, *could* protect [plaintiff's] concrete interests.'" Natural Res. Def. Council v. Salazar, 686 F.3d 1092, 1098 (9th Cir. 2012) (quoting Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1226 (9th Cir. 2008)).

Plaintiff does not assert a procedural right that will protect its "concrete" threatened interests. Even though plaintiff alleges legal violations of the ESA and NEPA, plaintiff makes clear that it adamantly opposes urbanization and seeks to prevent the pipeline project from occurring at all. See Pl.'s Am. Mem. at 3 ("Without a

---

[1]Plaintiff also invokes the "public rights exception," which relates to issues of joinder and is not relevant to the court's analysis of standing requirements. See Kescoli v. Babbit, 101 F.3d 1304, 1311 (9th Cir. 1996).

new source of water, Veneta's growth is therefore limited.");
Emmons Decl. at 3 ("Without the water pipeline, the city of
Veneta's growth would be constrained, and the pressures of
development . . . would be significantly lessened."); Bauguess
Decl. at 2 ("Without the pipeline, the City of Veneta would lack
enough water to grow its suburban sprawl.").

Thus, plaintiff's asserted injury of increased urbanization
stems from Veneta's decision to pursue the pipeline project rather
than defendants' alleged failure to follow the procedures required
by the ESA and NEPA. Fund For Animals v. Babbitt, 2 F. Supp. 2d
570, 575 (D. Vt. 1997) ("[A]ny injuries the plaintiffs have
suffered are attributable to the state's decision to organize the
moose hunt, not to the failure of federal officials to comply with
NEPA."). As a result, plaintiff fails "to establish a causal
connection between the threatened injury" and the defendants'
actions to support standing based on procedural injury. Salazar,
686 F.3d at 1098.[2]

Finally, plaintiff cannot establish redressability of the
alleged harm. As an initial matter, plaintiff fails to establish an

_____

[2]Even if the court considered plaintiff's alleged
substantive injury, "the 'causal connection' put forward by
[plaintiff] relies on an 'attenuated chain of conjecture'
insufficient to support standing." Salmon Spawning, 545 F.3d at
1228 (quoting Ecological Rights Found. v. Pac. Lumber Co., 230
F.3d 1141, 1152 (9th Cir. 2000)). As explained above, plaintiff's
alleged injury depends on a series of future actions by third
parties and is not "fairly traceable" to defendants' actions.

14 - OPINION AND ORDER

imminent threat of injury traceable to defendants' actions, and "[w]ith no threatened injury there is nothing to redress." Salazar, 686 F.3d at 1098; see also Valley Forge, 454 U.S. at 472 ("The requirement of 'actual injury redressable by the court' . . . tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.") (internal citation omitted); Arakaki, 477 F.3d at 1064 (an injury is not redressable where the potential benefit of suit is speculative).

Moreover, the pipeline project is not contingent on federal funding, and Veneta unequivocally states that it will proceed with the pipeline project with or without federal funding. See Levine v. Vilsack, 587 F.3d 986, 994-95 (9th Cir. 2009) (an alleged injury was not redressable where it depended on the conduct of a third party); Boating Industry Ass'n v. Marshall, 601 F.2d 1376, 1380 (9th Cir. 1979) ("[I]f the injury stems not from the government action disputed, but from an independent source, a federal court cannot provide the plaintiff redress by directing the government to alter its action.").[3] According to Veneta's City Administrator:

---

[3]On this point, plaintiff maintains that defendants confuse standing with mootness, and that Veneta did not pursue alternative financing until plaintiff filed suit and has not abandoned federal funding of the project. However, it is undisputed that Veneta has always had the authority and intent to construct the pipeline project, with or without federal assistance.

> Even without federal government financing, the City has
> the authority to construct the water pipeline project,
> the City has the financial means to construct the water
> pipeline project, and the City has every intention of
> seeing the water pipeline project construction through to
> completion. The City is fully resolute in its
> determination to complete the water pipeline project.

Ingham Decl. at 4. The record support's Veneta's assertion.

In 2010, the Veneta City Council adopted Ordinance 496 authorizing the issuance of $17,000,000.00 in water revenue bonds to finance the pipeline project. Ingham Decl. at 2; USDA AR I at 1131-32. In 2011, Veneta contracted for specific engineering services related to the project, and this past summer Veneta began the bidding process for the project construction. Veneta has pursued financing options which, in conjunction with the revenue bonds, will allow Veneta to proceed with the project without the federal funding package, though at a higher cost to water consumers. Ingham Decl. at 2-3. Consequently, Veneta intends to begin the first phase of construction, regardless of the court's decision in this matter, on October 20, 2012.[4]

In short, even if the court set aside the LOC and EA, Veneta will complete construction of the water pipeline. Therefore, the injury alleged by plaintiff will not be redressed by a favorable

---

[4]Plaintiff suggests that the court could invoke the All Writs Act, 28 U.S.C. § 1651, to enjoin Veneta's construction of the pipeline project if defendants' actions are found to violate ESA or NEPA, thus redressing plaintiff's alleged harm. Plaintiff fails to explain how the All Writs Act authorizes this court to exercise jurisdiction over Veneta or how it establishes standing.

16 - OPINION AND ORDER

ruling from this court. See <u>Salmon Spawning</u>, 545 F.3d at 1227 ("[A]lthough we can set aside the BiOp, we cannot remedy the harm asserted."); <u>Goat Ranchers of Or. v. Williams</u>, 379 Fed. Appx. 662, 663 (9th Cir. 2010) ("The Oregon Department of Fish and Wildlife is not a party before the court, and is free to continue (as it has indicated it will) the trapping and killing of cougars regardless of any relief available to appellants in this case."); <u>Fund For Animals</u>, 2 F. Supp. 2d at 575 ("Because the state consistently has indicated it will continue the moose hunt, it is mere speculation that a favorable decision by this Court will in any way redress the plaintiffs' alleged injuries.").

In sum, plaintiff fails to demonstrate particularized, imminent injury in fact that is fairly traceable to defendants' actions and likely to be redressed by a favorable court ruling. Accordingly, plaintiff lacks standing to pursue this action.

<u>CONCLUSION</u>

Plaintiff's motion for summary judgment (doc. 15) is DENIED, and defendants' cross-motion for summary judgment (doc. 24) is GRANTED. The Clerk is directed to enter judgment for defendants. IT IS SO ORDERED.

DATED this ___19th___ day of October, 2012.

_____
Ann Aiken
United States District Judge

17 - OPINION AND ORDER